In the Matter of a Proposal or Plan by MORTGAGE COMMISSION OF THE STATE OF NEW YORK to Exercise Its Limited Powers with Respect to a Mortgage Covering Premises Known as 11–13 East Sixty-third Street, Borough of Manhattan, County, City and State of New York, Guaranteed by BOND AND MORTGAGE GUARANTEE COMPANY and Designated as Guaranty No. 210,254.

Supreme Court, Additional Special Term, New York County, May 27, 1937.

*Maurice Finkelstein* [*Leonard H. Bernstein* of counsel], for the State Mortgage Commission.

*J. Donald Whelehan* [*Raymond H. O'Connor* of counsel], for the Superintendent of Insurance of the State of New York.

*C. E. Spedick* [*Edward F. Kiernan* of counsel], for the Title Guarantee and Trust Company.

*Kelley & Connelly* [*John E. Connelly* of counsel], for the purchaser.

FRANKENTHALER, J. This is an application by the Mortgage Commission of the State of New York for judicial approval of a proposed sale of certain real property owned at the present time by Mortgage Commission Realty Corporation, a wholly owned and controlled subsidiary of the Mortgage Commission. The property was acquired by said subsidiary as a result of the Commission's foreclosure of a first mortgage on the property in the principal amount of $150,000. Certificates evidencing participating shares or interests in the mortgage were issued by Title Guarantee and Trust Company and guaranteed by Bond and Mortgage Guarantee Company. There are at present fifty-three holders of certificates, aggregating $131,900 in face amount. The remaining $18,100 represents the share or interest of Title Guarantee and Trust Company in the mortgage. Out of the certificates aggregating $131,900 certificates totalling $107,000 in face amount are held by Title Guarantee and Trust Company for various trust accounts so that the said company, as trustee and in its own behalf, holds certificates of a total face value of $125,150, *i. e.*, more than five-sixths of the principal amount of the mortgage.

In addition to the unpaid principal of $150,000, interest arrears up to and including February 1, 1937, amount to $49,500 and taxes and water arrears aggregate an additional $25,422.10. The proposed sale whose approval is now sought calls for an all cash purchase price of $83,000 plus an additional payment of $750

to cover the expenses and disbursements incurred in the promulgation of the plan. After deducting from the cash proceeds of the sale the brokerage commission, tax arrears and other disbursements, the net proceeds to be distributed *pro rata* among the certificate holders will amount to $47,142.32, which represents thirty-one and four-tenths per cent of the principal amount of the mortgage. This means that each certificate holder will receive thirty-one and four-tenths cents for every dollar in face value of certificates held by him, and will receive nothing for the unpaid interest arrears of $49,500. Viewed somewhat differently, the net amount to be distributed among the certificate holders is even less than the interest arrears on the mortgage, *without any payment on account of principal.*

Unfortunately for the certificate holders, the testimony establishes that the proposed price of $83,000 represents the fair and reasonable market value of the property at the present time. Although it is possible that a somewhat larger price might be realized in the near future if the property were not sold at this time, the evidence indicates that the increment in price which might reasonably be expected if the property were sold later on would be more or less offset by the additional taxes and other carrying charges accruing during the interim. The property has been untenanted for at least four or five years and produces no income, while carrying charges, including the compensation of a caretaker, amount to $4,371 per annum. The parcel in question consists of two four-story and basement private residences on East Sixty-third street, near Fifth avenue. The present assessed valuation is $144,000. The buildings were erected more than forty years ago and are obsolete. " The houses are gutted and wrecked throughout the interior. * * * The roof has leaked very badly so that the water has gone right through from the roof to the cellar. A majority of the ceilings and plaster throughout the building are all down — the building is uninhabitable at the present time. They have merely a nominal value for the four walls, for something that might be done with them. They are just wrecks." The buildings can be successfully altered into dwellings only at a very high cost, somewhere between $25,000 and $75,000, depending upon the character of the alteration. The proposed purchaser intends to alter the buildings into small suites at a cost of between $45,000 and $60,000 and to occupy the lower part himself. The certificate holders possess no funds with which to alter the premises themselves so that they can produce an income. Both the Mortgage Commission and the title company are in favor of the proposed sale. Taking these cir-

cumstances into ·consideration, and bearing in mind that there is no assurance that a substantially higher price will be obtained hereafter if the property is not presently sold, the court is of the opinion that the proposed sale should be approved as fair and equitable.

Certain circumstances were, however, brought to the court's attention at the hearing of the present application which cannot be left unmentioned. The action to foreclose the $150,000 mortgage was commenced in 1932 and was subsequently continued by the Mortgage Commission which finally took title in the name of its subsidiary on August 20, 1936. A deficiency judgment was sought against one Franklin Pettit who was liable on a collateral bond for all of the indebtedness in excess of $140,000. The day before the foreclosure sale of the property the attorney in charge of the foreclosure for the Mortgage Commission received a telephone call from " a person who represented himself to be connected with " Pettit's attorneys in which inquiry was made as to the maximum bid which would be made by the Commission at the auction sale. The attorney for the Commission advised the inquirer that he was prepared to bid up to $215,000 (that being approximately the amount due on the mortgage together with all arrears of interest, taxes, etc.). The following day a bid of $214,000 was made by an unidentified person. The assistant attorney in charge of the foreclosure department of the Mortgage Commission testified at the hearing that he was convinced that the bid of $214,000 was made on behalf of Pettit. The attorney for the Commission was under instructions " to bid the minimum amount actually necessary to purchase said premises at such sale " and accordingly bid $215,000, at which figure the property was struck off to the plaintiff. The result of the plaintiff's bidding in the property at $215,000, which represented the total amount due, was that Pettit was relieved of liability on his collateral bond. Had the bid of $214,000 for property worth in the neighborhood of $85,000 been accepted, the certificate holders would have received full payment of the principal of their certificates, and of practically all the arrears of interest thereon. The justification which a representative of the Mortgage Commission furnished at the hearing for the Commission's failure to accept the bid of $214,000 for property which they are proposing to sell for $83,000 about a year later, was that he felt the Commission did not have the right to accept less than the full amount due on the mortgage. No justification whatsoever for the disclosure to Pettit's attorneys, prior to the sale, of the maximum amount which the Commission would bid is to be found in the record and it is difficult to conceive

of any. Admittedly no inquiry was even made as to the financial responsibility of Pettit. As a result of this comedy of errors the certificate holders are now obliged to be content with a payment amounting to less than the arrears of interest on their mortgage, with a complete loss of principal. The situation was aptly described by one of the certificate holders at the hearing: " The proceedings for foreclosure were commenced in 1932. I have lived practically in the Bond and Mortgage Guarantee Corporation's offices and in the Mortgage Commission's trying to force something to be done, and I was also cognizant of the position of this Franklin Pettit. Many explanations were made to me and throughout it all, looking backward now, it looks to me as it were a very slipshod sort of an affair. Nobody stopped this man who was the owner from sliding out of his obligation on a collateral bond, of what would have amounted to about $70,000. The certificate holders had not a chance in it. They were never consulted in any way either by the Bond and Mortgage Guarantee Corporation or by the Mortgage Commission. The only meeting that the Mortgage Commission held was when the tax liens were being sold in 1937, and this thing was rushed forward to the point where we had to accept it or lose it all possibly." It appeared at the hearing that the Mortgage Commission and the title company had made motions to vacate the sale which were denied, and that a motion for a deficiency judgment against Pettit was likewise denied. The motion to vacate made by the Commission was based solely upon other grounds and the first reference to the disclosure of the Commission's intention to bid $215,000 was contained in the reply affidavits. The basis of the title company's motion was that the bid made by the Commission was far in excess of the value of the property and was made without the knowledge of the title company.

For the reasons previously indicated the proposed sale is approved. The motion to strike out from the plan the provision that " the disposition of such proceeds of this sale as are referable to the holdings of the Title Guarantee & Trust Company shall be subject to the further order of this court " is likewise denied, the question involved being one for determination upon a formal motion based upon appropriate papers.

Settle order.